T.C. Memo. 2006-67


UNITED STATES TAX COURT



SUE TAYLOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 21744-03.          Filed April 6, 2006.


     P filed Federal income tax returns for P and two
LLCs for 1999 and 2000.  R subsequently determined
deficiencies and penalties with respect to P's income
taxes, which P contested primarily on the basis of tax
protester arguments.  P also argued that R did not
provide to either of the LLCs a final partnership
administrative adjustment and therefore the deficiency
notice mailed to her was premature.

     <u>Held</u>:  Following a concession by R, P is liable
for the remaining deficiencies, except for an
adjustment for a reduced share of income from one LLC
in 1999, determined by R for 1999 and 2000 including
self-employment taxes pursuant to sec. 1401, I.R.C.

     <u>Held</u>, <u>further</u>, P is liable for a penalty under
sec. 6662, I.R.C., for 1999 and 2000.

Sue Taylor, pro se.

Cameron M. McKesson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge: Respondent determined Federal income tax deficiencies in the amounts of $49,525 and $39,717 together with penalties pursuant to section 6662(a) in the amounts of $9,905 and $7,943.40 for taxable years 1999 and 2000, respectively.[1] After concessions,[2] the issues for decision are:

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent conceded petitioner's allegedly unreported income derived from National Land Bank LLC (National Land Bank) in the amount of $43,862 for 1999 because respondent determined that a tax return was filed for National Land Bank. However, there was a mathematical subtraction error on National Land Bank's Form 1065, U.S. Partnership Return of Income, for 1999. Instead of reporting $10,308 in income, National Land Bank reported a $10,308 loss. Petitioner's Form 1040, U.S. Individual Income Tax Return, Schedule E, Supplemental Income and Loss, consistent with the erroneous Form 1065, Schedule K-1 (Form 1065), Partner's Share of Income, Credits, Deductions, Etc., reported her 50-percent alleged distributive share loss of $5,154. The notice of deficiency for 1999 eliminated the $5,154 loss but, because of the claimed $43,862 income adjustment, did not contain an adjustment to properly reflect her mathematically corrected share of reported National Land Bank income. Furthermore, as discussed infra in text, the Court finds that petitioner is taxable in 1999 and 2000 on the income of Speck Trust, the other 50-percent member of National Land Bank. Therefore, petitioner has a total of $10,308 (her 50-percent $5,154 share plus Speck Trust's 50-percent $5,154 share) of additional income for 1999 from National Land Bank in lieu of the conceded $43,862.

(continued...)

(1) Whether petitioner is liable for deficiencies for her taxable years 1999 and 2000;

(2) whether petitioner is liable for penalties under section 6662(a) for her taxable years 1999 and 2000; and

(3) whether the Court should impose a penalty, sua sponte, under section 6673.

FINDINGS OF FACT

I.   Background

Some of the facts have been deemed stipulated pursuant to Rule 91(f) and are so found.[3]  The stipulated facts, with accompanying exhibits, are incorporated in our findings by this reference.  At the time this petition was filed, petitioner resided in Gilbert, Arizona.

---

[2](...continued)
As to respondent's concession, this Court has the discretion to accept or reject an offered concession.  McGowan v. Commissioner, 67 T.C. 599, 604-607 (1976)("All concessions, including stipulated settlement agreements, are subject to the Court's discretionary review.  Only through this process can the interests of justice be protected."  Id. at 607.).  In this case, we reject $10,308 of respondent's concession due to the mathematical calculation error.

[3] Petitioner objected to many of the paragraphs in the Stipulation of Facts as well as questions from respondent during direct examination on Fifth Amendment grounds.  The Court informed petitioner on more than one occasion that even if it was found to be applicable, she was not permitted to use the Fifth Amendment privilege as both a sword and a shield.  See United States v. Rylander, 460 U.S. 752, 758 (1983); Ruocco v. Commissioner, 346 F.3d 223, 224 (1st Cir. 2003), affg. T.C. Memo. 2002-91; Lehmann v. Commissioner, 63 Fed. Appx. 412, 413 (9th Cir. 2003); see also infra Part II, Petitioner's Fifth Amendment Claims.

Petitioner initially filed a timely Form 1040, U.S. Individual Income Tax Return, for 1999 on which she reported a $133 loss on her Schedule C, Profit or Loss From Business, from her Nature's Herb & Tea Garden business and a $3,964 Schedule E loss. The Schedule E loss arose from her membership in Miroyal, LLC (Miroyal) from which she reported income of $1,190 and her membership in National Land Bank, LLC (National Land Bank) from which she reported a loss of $5,154 for a net loss from the two entities combined of $3,964. Adding this alleged loss to the $133 loss from Schedule C resulted in a negative adjusted gross income of $4,098 and no taxable income.

Petitioner adopted an aggressive approach to Federal income taxation when she filed her Form 1040 for 2000. That approach utilizing discredited protester arguments resulted in petitioner's timely filing of a Form 1040 for 2000 which reported "0" amounts on all relevant lines of the tax return.[4] In June 2001, petitioner filed a Form 1040X, Amended U.S. Individual

---

[4] Petitioner included with her Form 1040 for 2000 a letter entitled: "Asseveration of Claimed Gross Income", claiming, among other things, that she did not have gross income or "any items of gross income from any taxable sources listed by the Secretary". With her Form 1040X, Amended U.S. Individual Tax Return, for 1999, petitioner submitted similar letters and made similar statements that she did not earn any income taxable under sec. 861. Petitioner, as managing member of Miroyal and National Land Bank, submitted similar documents with Miroyal's and National Land Bank's Forms 1065 for the 2000 taxable year and National Land Bank's amended Form 1065 for its 1999 taxable year. The Court deems petitioner's claims to be frivolous and will not discuss the issue any further in this report. See Woods v. Commissioner, T.C. Memo. 2006-38.

Income Tax Return, for 1999, reflecting "0" in the "corrected amount" column of the return. Respondent audited her individual 1999 and 2000 income tax returns.

On September 10, 2003, respondent issued to petitioner a notice of deficiency determining that petitioner received $164,356 and $126,686.85 of taxable income for 1999 and 2000, respectively, had tax deficiencies, and owed tax penalties. Petitioner timely filed her petition with this Court on December 22, 2003.

II. <u>Income</u>

During 1999 and 2000, petitioner earned income as a real estate sales and property manager and as the proprietor of a business, Nature's Herb & Tea Garden. Petitioner was also a member of two limited liability companies (LLCs), Miroyal and National Land Bank, for 1999 and 2000. At trial, petitioner objected to confirming her occupations and associations stating that the answers might incriminate her, and she chose to invoke the Fifth Amendment as a defense.

Petitioner was warned that she should assume she had the burden of proof and was given the opportunity to present her case to the Court; however, she chose not to do so. She presented no evidence, nor did she offer any witnesses on her behalf. In resting her case, petitioner stated: "I don't have any witnesses

to call. And I will just let the Government go ahead with the case and proceed. I don't believe that I owe the deficiencies that they are claiming. And I'll just let them go ahead and bring forth their case. I rest my case."

Because petitioner would not cooperate with or provide documents for the audit, respondent computed petitioner's income using an indirect bank deposit analysis. This was accomplished by examining copies of checks and bank statements and determining whether the bank deposits reflected in the statements constituted gross income to petitioner. Petitioner had signatory authority over four accounts, which respondent contends are relevant to this case: (1) Arizona Federal Credit Union (Account No. 136856 - Sue Taylor), (2) Norwest Bank Arizona, N.A. (Account No. 6056602931 - Sue Taylor d|b|a Nature's Herb & Tea Garden), (3) San Tan Credit Union (Account No. 8198 - National Land Bank LLC), and (4) Arizona Federal Credit Union (Account No. 138022 - Sue Taylor d|b|a Miroyal L.L.C.). In addition, respondent disallowed expenses claimed on the filed tax returns for which no substantiation was provided.

A. Miroyal LLC

1. Taxable Year 1999

On October 1, 2000, petitioner signed and then on October 18, 2000, filed Form 1065, U.S. Partnership Return of Income, on

behalf of Miroyal for 1999. Miroyal claimed the following deductions for 1999: (1) Repairs and maintenance, $20,165; (2) interest, $15,696; and (3) other deductions, $14,107. Attached to Form 1065 was a listing of these "other deductions": Insurance, $5,913; miscellaneous, $6,351; and utilities, $1,843. During 1999 and 2000, Miroyal had two members. According to the filed 1999 Form 1065 partnership tax return, each member, Sue Taylor and Gerald Ricks, had a 50-percent interest. Sue Taylor was designated as the tax matters partner on the calendar year 2000 Form 1065 Federal tax return.[5] On its Form 1065, Miroyal reported $2,380 of income for 1999. Petitioner's Form 1065, Schedule K-1 reflected her one-half distributive share of Miroyal's income in the amount of $1,190.

     2.    <u>Taxable Year 2000</u>

On April 19, 2001, petitioner filed Miroyal's Form 1065 for 2000. Miroyal reported no income and no deductions for 2000. In addition, petitioner attached Form 8275, Disclosure Statement, referencing tax protester rhetoric claiming that Miroyal did not have any income from any taxable sources. During 2000, the filed Form 1065 partnership tax return indicated petitioner and Gerald

---

[5] Miroyal's Form 1065 for 1999 did not designate a tax matters partner.

Ricke[6] had a 95-percent and 5-percent membership interest in Miroyal, respectively.  The Form 1065, Schedules K-1 for both petitioner and Gerald Ricke reflected a distributive share of zero dollars for 2000.

B.    National Land Bank LLC

1.    Taxable Year 1999

National Land Bank filed its Form 1065 for 1999 on October 19, 2000, with attached Schedules K-1 showing petitioner and Speck Trust (Speck) each with a 50-percent membership interest. In 1999, National Land Bank reported $110,544 in gross receipts and sales and claimed "other deductions" totaling $100,236 for a claimed $10,308 loss.  Revenue Agent Wayne Johnson (Mr. Johnson) testified that petitioner made a mathematical error on National Land Bank's Form 1065 for 1999.  The $10,308 loss should have been reflected as $10,308 of income.[7]

On June 25, 2001, petitioner filed an amended Form 1065 for National Land Bank's 1999 taxable year showing zero dollars in taxable income and changing the membership interest:  Petitioner 25 percent and Speck International Trust 75 percent.[8]  Attached

---

[6] The Court (noting that the letters "e" and "s" are diagonally adjacent on a standard typewriter keyboard) assumes that Gerald Ricks and Gerald Ricke are the same person.  In any event, it is not material to this opinion.

[7] See supra note 2.

[8] The Court assumes Speck Trust and Speck International
(continued...)

to the amended Form 1065 was Form 8275 including tax protester rhetoric similar to that on Form 8275 attached to the return filed by Miroyal in 2000.

During 1999 and 2000, National Land Bank had a bank account at the San Tan Credit Union (Account No. 8198).  Mr. Johnson testified that petitioner controlled Account No. 8198 at the San Tan Credit Union in the name of National Land Bank and authorized all payments from this account in the name of National Land Bank.

2.  Taxable Year 2000

On June 7, 2001, petitioner filed Form 1065 for 2000 on behalf of National Land Bank showing no income.  As in the instance of the amended 1999 tax return, the attached Form 8275 contained tax protester rhetoric.  In addition, a Form 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. (stating that National Land Bank had, in petitioner's opinion, been unable to obtain a correct Form 1099, Miscellaneous Income, from its employer, Circle G Property Development), accompanied National Land Bank's Form 1065 tax return for 2000.

---

[8](...continued)
Trust are one and the same entity and shall hereafter refer to both as "Speck".  Despite the amended 1999 Federal income tax returns for petitioner and National Land Bank, respondent audited the original returns, and the audit adjustments are keyed to those returns as is our report in this case.

3. <u>Speck</u>

Petitioner did not explain, nor did she provide any documents illuminating her relationship with Speck. Although petitioner testified that she did not control all the assets held in the name of Speck during 1999 and 2000, she offered no evidence or documentation that anyone other than herself was the grantor of, was a beneficiary of, or controlled Speck.

On August 10, 1998, Speck issued to Krismon Buttes, LLC (Krismon Buttes), an entity in the business of real estate investment, invoice No. 303 for "International Marketing services rendered for the years 1998 thru 2000" in the amount of $70,000. Krismon Buttes issued check No. 1023 to Speck on August 19, 1998, in the amount of $70,000. William A. McGlothlin (Mr. McGlothlin), bookkeeper for Krismon Buttes from 1996-2002, testified that he issued to Speck a Form 1099 after check No. 1023 was issued. Check No. 1023 did not clear Krismon Buttes's checking account. Mr. McGlothlin was instructed to void check No. 1023.

More than a year later, on September 28, 1999, Krismon Buttes issued check No. 1027 in the amount of $70,000 to Property Resources as a replacement for the original check No. 1023. Check No. 1027 cleared Krismon Buttes's checking account and was deposited into a payee account at Swiss American Bank Limited, High Street, St. John's, Antigua. Respondent attributed the

$70,000 payment made to Property Resources, by check No. 1027, for taxable year 1999 to petitioner.

Mr. McGlothlin stated that petitioner, whom he personally knew for 18 years, was a friend of the owners of Krismon Buttes, and petitioner provided marketing services to Krismon Buttes. At trial, respondent's counsel asked petitioner whether she provided marketing services to Krismon Buttes during 1999. Petitioner responded: "I do not provide services personally myself. That was through Speck Trust."

The original 1999 Schedules K-1 from National Land Bank for both Speck and petitioner listed their address and National Land Bank's as 20 North Gilbert Road, Gilbert, Arizona, 85234. However, when National Land Bank filed its amended Form 1065 for 1999, Speck's address was changed to 5804 W. Vista Drive #347, Glendale, Arizona 85301. For 2000, Schedules K-1 for Speck and petitioner did not list their respective addresses although the Form 1065, Schedule K-1 instructions, and the form respectively required and provided space for those addresses. See sec. 1.6031(b)-1T(a)(3)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 34491 (Sept. 7, 1988).

C. Nature's Herb & Tea Garden

For 1999 and 2000, respondent contended that petitioner operated a business named Nature's Herb & Tea Garden. Respondent provided copies of numerous checks written during the relevant

time period payable to Nature's Herb & Tea Garden which had been deposited into the Norwest Bank Arizona, N.A. account titled, "Sue Taylor d|b|a Natures's Herb & Tea Garden". Respondent also provided copies of checks drawn on Nature's Herb & Tea Garden's Norwest Bank Arizona, N.A. account and signed by petitioner, as well as copies of the account's bank statements reflecting Sue Taylor DBA Nature's Herb & Tea Garden.

OPINION

I. Contentions of the Parties

On the premise of tax protester arguments, petitioner contends that she did not receive any taxable income for 1999 and 2000. She also maintains, among other things, that any income received by any LLCs in which she was a member cannot be attributed to her because respondent did not issue the LLCs a final partnership administrative adjustment (FPAA) before issuing the notice of deficiency. Further, petitioner states that even if income in 1999 and 2000 can be attributed to her, she is entitled to deductions, allowances, and credits that should have reduced her tax liability to zero. Petitioner also asserts that she should be entitled to recover her litigation and/or administrative costs.[9] Lastly, petitioner raises tax protester

_____

[9] Although petitioner claimed in her petition that she should be entitled to recovery of her administrative or litigation costs, she did not argue for costs at trial or on brief. In any event, consideration of her eligibility for costs

(continued...)

arguments under the Fifth Amendment to the Constitution in opposition to the filing requirement.

Respondent claims that petitioner received income in 1999 and 2000 from various sources. Respondent maintains that the entities, National Land Bank and Speck, should be disregarded for tax purposes due to each entity's lack of economic substance. Thus, the income from these entities should be attributed to petitioner. Because petitioner did not pay taxes on self-employment income, respondent maintains that petitioner is liable for self-employment tax, and since petitioner did not substantiate Miroyal's or her deductions, respondent seeks to disallow the claimed deductions.

## II. Petitioner's Fifth Amendment Claims

A person does not have a blanket Fifth Amendment privilege to avoid filing a Federal income tax return or to refuse signing a Federal income tax return under penalties of perjury. See United States v. Sullivan, 274 U.S. 259, 263 (1927); see also Major v. Commissioner, T.C. Memo. 2005-141 n.2; Brunner v. Commissioner, T.C. Memo. 2004-187, affd. per curiam 142 Fed. Appx. 53 (3d Cir. 2005). In order for an individual validly to

---

[9](...continued)
under sec. 7430 would be premature, and the Court will not further discuss the issue in this report. See Rule 231.

claim the privilege against self-incrimination, there must be a "real and appreciable danger" from "substantial hazards of self incrimination", and the individual must have "'reasonable cause to apprehend (such) danger from a direct answer' to questions posed to him". United States v. Neff, 615 F.2d 1235, 1239 (9th Cir. 1980)(quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)). "A taxpayer cannot base his failure either to cooperate with the IRS or to produce records on a generalized fear of self-incrimination. The fifth amendment privilege cannot be used as a method of evading payment of lawful taxes." Edelson v. Commissioner, 829 F.2d 828, 832 (9th Cir. 1987), affg. T.C. Memo. 1986-223.

Respondent confirmed at trial and represented to both the Court and petitioner that there were no open, contemplated, anticipated, or planned criminal investigations of petitioner. Petitioner, when asked, indicated she had no specific basis for fearing criminal action, but nevertheless insisted on asserting her Fifth Amendment claim as she felt it was inappropriate to testify against herself.

> THE COURT: Are you talking about your right against self-incrimination?
>
> MS. TAYLOR: Yes, in the Fifth Amendment.
>
> THE COURT: And do you have some other right that you're standing on beside that one?
>
> MS. TAYLOR: No, just the Fifth.

THE COURT: All right. Do you have some reason to believe that you're under criminal investigation or?

MS. TAYLOR: No, I don't. But any time that you testify it becomes a record. And, you know, it's not a good idea to testify against yourself so other people can use that. So, you know, I don't know what would ever happen in the future. Or it could become -- it's public record so I'm not going to testify against myself. Would you?

Petitioner did not demonstrate that there was any real or appreciable danger of self-incrimination, nor did she offer to provide to the Court in camera any particularized basis or facts supporting the claimed Fifth Amendment privilege. Therefore, petitioner was not entitled to use the Fifth Amendment as a defense to participating in the required Rule 91 stipulation process and answering questions posed to her at trial.

III. Petitioner's Income Tax Liability

A. Burden of Proof

In general, the Commissioner's determination of a taxpayer's tax liability is presumed correct, and the taxpayer bears the burden of proving that respondent's determination is improper. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The "presumption of correctness" is appropriate where respondent has furnished evidence linking the taxpayer to the "tax generating activity". Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559.

The Court of Appeals for the Ninth Circuit, the court to which an appeal of this case would normally lie, has made clear that if respondent introduces evidence that the taxpayer received unreported income, as respondent did here, the burden generally is on the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary and erroneous. Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97; see also Palmer v. United States, 116 F.3d. 1309, 1312 (9th Cir. 1997)("The Commissioner's deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation." (Emphasis added.)); Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982) ("[T]he Commissioner's assertion of deficiencies are presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received unreported income.").

However, section 7491 may shift the burden to respondent in specified circumstances, for example, where the taxpayer produces "credible evidence" and meets other requirements. Sec. 7491(a)(1). The legislative history of section 7491 clarifies the meaning of "credible evidence":

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue

if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the Secretary has not sustained his burden of proof. * * * [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

In addition, to effectuate a shift in the burden of proof, petitioner must maintain all records required by the Code and regulations and cooperate with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2).

Petitioner did not satisfy the prerequisites under section 7491(a)(1) and (2) to shift the burden of proof to respondent. Consequently, except for any penalties subject to section 7491(c), as to which respondent bears the initial burden of production, the general premise of Rule 142(a) remains applicable.

B.    Bank Deposits Method for Computing Taxable Income

The IRS has broad powers under section 446 to compute the taxable income of a taxpayer.  Sec. 446; Petzoldt v. Commissioner, 92 T.C. 661, 639 (1989).  Generally, such computation is made using the taxpayer's regularly employed method of accounting.  Sec. 446(a).  If the taxpayer's method of

accounting does not clearly reflect income, then the method used shall be the method, which, in the Commissioner's opinion, clearly reflects income.  Sec. 446(b); see Palmer v. United States, supra at 1312.  Respondent is afforded great latitude in determining a taxpayer's liability and is entitled to use any reasonable method to reconstruct a taxpayer's income, especially where a petitioner refuses to cooperate in ascertaining her income.  Petzoldt v. Commissioner, supra; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).

Petitioner did not provide any evidence regarding her liability, and respondent was able to acquire petitioner's bank records only by summons.  Respondent used the bank deposits method to determine that petitioner earned the income attributed to her in the statutory notices of deficiency for 1999 and 2000. "Where the Commissioner's method of calculating income is rationally based, courts afford a presumption of correctness to the Commissioner's determination."  Palmer v. United States, supra at 1312.  "The use of the bank deposit method for computing income has long been sanctioned by the courts."  Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975)(and cases cited thereat), affd. 566 F.2d 2 (6th Cir. 1977).  "A bank deposit is prima facie evidence of income, and respondent need not prove a likely source of that income."  Tokarski v. Commissioner, 87 T.C.

74, 77 (1986)(citing <u>Estate of Mason v. Commissioner</u>, <u>supra</u> at 656-657).

"The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge." <u>Clayton v. Commissioner</u>, 102 T.C. 632, 645-646 (1994). "When a taxpayer keeps no books or records, has large bank deposits, and offers no plausible explanation of such deposits, the Commissioner is not arbitrary or capricious in resorting to the bank deposit method for computing income." <u>Estate of Mason v. Commissioner</u>, <u>supra</u> at 657.

At trial, Mr. Johnson thoroughly explained the method used to reconstruct petitioner's income for 1999 and 2000. Mr. Johnson reviewed each of the bank deposits to determine whether the deposit was from a taxable or nontaxable source. Petitioner did not offer into evidence any books, records, or receipts on her behalf, nor did she offer any evidence challenging respondent's income calculations.

C.   <u>Final Partnership Administrative Adjustment</u>

Petitioner argues that any 1999 or 2000 LLC income cannot be attributed to her because respondent did not issue Miroyal or National Land Bank an FPAA before issuing her notice of

deficiency.  Generally, the Commissioner may not assess a deficiency attributable to any partnership item until the 150th day after the day on which the FPAA was mailed to the tax matters partner.  Sec. 6225.

For purposes of sections 6221 through 6234, a partnership is defined by section 6231(a)(1)(A) to mean in general "any partnership required to file a return under section 6031(a)." Section 6231(a)(1)(B)(i) provides an exception to the definition of a "partnership" for small partnerships.  The term "partnership" for this purpose does not include "any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner."  Miroyal is a partnership with only two partners:  Petitioner and Gerald Ricke.  Both partners are individuals; thus, Miroyal falls within the section 6231(a)(1)(B) "partnership" exception.

However, a small partnership can elect to have Subchapter C of Chapter 63 apply.  See sec. 6231(a)(1)(B)(ii).[10]  Miroyal did not make this election in 1999 or 2000.  Because Miroyal falls

---

[10] A partnership may elect to have Subchapter C apply to the tax treatment of partnership items by checking the proper box on Form 1065, Schedule B and by "attaching a statement to the partnership return for the first taxable year for which the election is effective."  Sec. 301.6231(a)(1)-1(b)(2), Proced. & Admin. Regs.  Miroyal neither checked the box on line 4 of Form 1065, Schedule B on its 1999 or 2000 Form 1065, nor did it attach a statement to the Form 1065 electing to have Subchapter C of Chapter 63 apply.

under the exception to the definition of a partnership as provided in section 6231(a)(1)(B) and did not elect out of the exception, respondent was not required to issue it an FPAA before mailing the deficiency notice to petitioner.

National Land Bank does not fall within the small partnership exception because one of its partners, Speck, is a trust and not an individual. However, respondent used the indirect bank deposit method to calculate petitioner's income. Section 6231(c)(1)(C) establishes a special rule where "indirect methods of proof of income" are utilized. This rule permits respondent to treat what would otherwise be partnership items, as nonpartnership items for purposes of sections 6221 through 6234.[11] The rule applies to the extent regulations issued by the Secretary provide that treatment of an item as a partnership item will interfere with the effective and efficient enforcement of the revenue laws.

Section 301.6231(c)-6T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987), provides that the treatment of items as partnership items with respect to a partner whose income is determined by an indirect method of proof will interfere with

---

[11] A partnership item with respect to a partnership is defined as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." Sec. 6231(a)(3).

the effective and efficient enforcement of internal revenue laws. Consequently, the partnership items of such partner, arising in a partnership taxable year ending on or before the last day of the taxable year of the partner for which a deficiency notice based upon an indirect method of proof is mailed to the partner, shall be treated as nonpartnership items as of the date on which the deficiency notice is mailed. Therefore, respondent was not required to issue National Land Bank an FPAA before mailing the statutory notice of deficiency to petitioner.

D. Miroyal Income

At trial, petitioner asserted the Fifth Amendment privilege and refused to admit or deny whether she provided real estate services in 1999 and 2000. Similarly, petitioner refused to confirm or deny whether she managed real property in 1999 and 2000 on the same Fifth Amendment reasoning.

Respondent for lack of substantiation disallowed Miroyal's claimed deductions for 1999 as follows: $20,165 for repairs and maintenance, $15,696 of interest, and $14,107 of other deductions (i.e., insurance $5,913, miscellaneous $6,351, and utilities $1,843). Petitioner signed Miroyal's 1999 and 2000 Federal tax returns, naming herself the tax matters partner for 2000, yet she provided no receipts or records but provided only a typed list showing the total amounts Miroyal allegedly expended on the

claimed deductions.[12]  She did not offer any testimony, receipts, or canceled checks regarding any of Miroyal's claimed deductions. The list she prepared will not suffice as substantiation; therefore, respondent's disallowance of the claimed deductions in 1999 is sustained.

Respondent attributed 95 percent of Miroyal's 1999 income to petitioner as her distributive share.  However, Miroyal's Form 1065, Schedule K-1 for 1999, which respondent introduced into evidence, showed that petitioner was only a 50-percent member of Miroyal during that year.  Respondent's revenue agent apparently did not distinguish between 1999 and 2000 when testifying that petitioner held a 95-percent interest in Miroyal.  Miroyal's Form 1065, Schedule K-1 for 2000 reflected this ownership split, and neither the revenue agent nor respondent presented any other basis for or facts explaining the revenue agent's conclusion that the reported 50-percent membership percentage evidenced by petitioner's Form 1065, Schedule K-1 for 1999 was inaccurate. Thus, respondent's conflicting evidence presents the Court with a conundrum.

The filed 1999 Form 1065, Schedule K-1, which was prepared before petitioner commenced her overt tax protester activities,

---

[12] Miroyal did not designate a tax matters partner for 1999. In any event, a tax matters partner is necessary only for partnerships subject to secs. 6221 through 6233.  As previously discussed, Miroyal is not subject to secs. 6221 through 6233.

has independent tax significance as it allocated $1,190 of taxable income to the other reported 50-percent member, Gerald Ricke, who presumably paid tax on this amount. This is a substantial indicium that he was in fact a 50-percent member in 1999. Because respondent stipulated Miroyal's 1999 Form 1065, through his own Rule 91(f) motion, and also introduced it as evidence at trial, the Court finds, based on a preponderance of the evidence, that petitioner's distributive share of Miroyal's income for 1999 was 50 percent of $32,116 (i.e., $16,058 of which $1,190 was reported, leaving an adjustment of $14,868).[13]

For 2000, respondent allowed Miroyal a deduction for taxes and licenses of $2,231 as substantiated by the revenue agent via Miroyal's canceled checks. On the basis of an examination and analysis of Miroyal's bank deposits, the revenue agent determined that Miroyal had unreported income for 2000 of $57,639.51. Petitioner introduced no evidence to challenge or refute respondent's determination and therefore failed to carry her burden of proof. Because Miroyal's filed 2000 Federal tax return

---

[13] Miroyal's Form 1065, Schedule K-1 for 1999 did not contain an address or Social Security number. for Gerald Ricke; however, the Form 1065, Schedule K-1 for 2000 contained a Social Security number but no address for Gerald Ricke. Utilizing the supplied taxpayer identification number, respondent's revenue agent could have checked Gerald Ricke's 1999 Federal tax return to see whether it was filed and whether it properly reported the $1,190 of allocated income. If not, evidence to that effect would have supported the revenue agent's conclusion, but respondent never claimed this to be the fact.

signed by petitioner reflected that in 2000 she was a 95-percent member, respondent correctly attributed 95 percent of Miroyal's $55,408.51 of ordinary income for that year (i.e., $52,638) to petitioner.

E.    Speck and National Land Bank Income

1.    Taxable Year 1999[14]

a.    Income From Speck

A fundamental principle of tax law is that income is taxed to the person who earns it.  See Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111, 114-115 (1930).

> "Attempts to subvert * * * [the fundamental principle that income is taxed to the person who earns it] by diverting income away from its true earner to another entity by means of contractual arrangements, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes, regardless of whether such arrangements are otherwise valid under State law."
> [Residential Mgmt. Servs. Trust v. Commissioner, T.C. Memo. 2001-297 (quoting Barmes v. Commissioner, T.C. Memo. 2001-155).]

Under the assignment of income doctrine, gross income from personal services must be included in the income of the person who earned it.  Lucas v. Earl, supra at 114.  Such income is taxable to the person who earned it even though the taxpayer makes an anticipatory assignment of income and delivers a payor's

---

[14] With respect to National Land Bank income for 1999, see supra note 2.

check to a third party. See United States v. Allen, 551 F.2d 208, 212 (8th Cir. 1977).

Respondent determined that petitioner provided personal real estate marketing services to Krismon Buttes for which $70,000 was paid and that this $70,000 was taxable to petitioner. Petitioner testified that marketing services were provided to Krismon Buttes but denied providing them in her own name, stating they were provided through Speck. Respondent sought to attribute all the income of Speck to petitioner. Petitioner, however, introduced no evidence that Speck was an independent taxable entity rather than a sham, assignee, or grantor trust as contended by respondent. Where a sham transaction has no economic effect, it will not be recognized for tax purposes. Zmuda v. Commissioner, 731 F.2d 1417, 1421 (9th Cir. 1984) (citing Thompson v. Commissioner, 631 F.2d 642, 646 (9th Cir. 1980), affg. 66 T.C. 1024 (1976)), affg. 79 T.C. 714 (1982).

The address for Speck on National Land Bank's 1999 Form 1065, Schedule K-1, was the same as petitioner's: 20 N. Gilbert Road, Gilbert, Arizona 85234. On National Land Bank's amended 1999 Form 1065, the address for Speck on the attached Form 1065, Schedule K-1 was changed to 5804 W. Vista Drive, #347, Glendale, Arizona 85301. Changing Speck's address on the Form 1065, Schedule K-1 attached to National Land Bank's 1999 amended Form

1065 and completely omitting Speck's address on the Form 1065, Schedule K-1 attached to National Land Bank's 2000 Form 1065 in the context of this case appears to the Court to be deliberately deceptive and does not, given Mr. McGlothlin's testimony, establish two different taxable entities.

b.   Krismon Buttes's $70,000 Check Is Taxable to
     Petitioner

Petitioner did not provide any evidence demonstrating an independence from or a dissociation with Speck or Property Resources.  Speck issued Krismon Buttes an invoice in the amount of $70,000 for marketing services rendered.  Krismon Buttes issued Speck check No. 1023, which never cleared Krismon Buttes's checking account.  Subsequently, Krismon Buttes issued check No. 1027 in the amount of $70,000 to Property Resources as a replacement for check No. 1023.  The Court is skeptical that Speck would provide marketing services worth $70,000 to Krismon Buttes but, absent a quid pro quo, allow Krismon Buttes to deliver payment to Property Resources.  Petitioner fails to explain this.  Instead, at trial, petitioner asserted a Fifth Amendment privilege when asked whether she was compensated for marketing services she provided to Krismon Buttes.

This is an indication that any facts which could have been presented by her at trial would have been unfavorable to her position.  Petzoldt v. Commissioner, 92 T.C. 661, 691 (1989)

("The failure of a party to call such available witnesses that purportedly have knowledge about relevant facts provides sufficient basis to infer that the testimony of such witnesses would not have been favorable to the party."); see also McKay v. Commissioner, 886 F.2d 1237, 1238 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Little v. Commissioner, T.C. Memo. 1996-270.  Petitioner has not met her burden of proof; accordingly, the $70,000 paid to Property Resources is taxable to petitioner in 1999.[15]

### 2.   Taxable Year 2000

Petitioner's Form 1040 for 2000 reported no income from National Land Bank.  Respondent made adjustments to National Land Bank's income using the bank deposits method because respondent did not receive any audit cooperation or documents from petitioner for 2000.  Using the bank deposits method and the fact that petitioner had signatory authority over the account at San

---

[15] National Land Bank did not report the $70,000 on its 1999 Form 1065 presumably because Krismon Buttes, at Speck's request, reissued the check to Property Resources.  However, because the check was originally issued to Speck in payment of Speck's invoice for services rendered and because Speck is a disregarded entity for Federal tax purposes, the $70,000 is taxable to petitioner.

Because the parties did not raise the timing issue of constructive receipt of the $70,000 in the 1998 taxable year when the original check was made payable to and delivered to Speck, the Court does not address this issue.

Tan Credit Union under the name of National Land Bank LLC (Account No. 8198), respondent effectively connected the deposits from taxable sources to National Land Bank's account. Petitioner introduced no evidence to refute this adjustment.

Respondent's bank deposit method is an acceptable means to determine the amount of income received by National Land Bank in 2000. Moreover, Speck in 2000 is treated as a disregarded entity for Federal tax purposes; therefore, all the income earned by National Land Bank ($35,200), including Speck's share, is attributed to petitioner.

### F. Nature's Herb & Tea Garden Income

Petitioner refused to confirm or deny that she maintained the business, Nature's Herb & Tea Garden. Respondent provided bank records showing checks payable to Nature's Herb & Tea Garden deposited into an account at Norwest Bank Arizona, N.A. in the name of "Sue Taylor d|b|a Natures Herb & Tea Garden". The uncontroverted evidence of bank deposits being made to the account controlled by petitioner is sufficient to link petitioner to the income from Nature's Herb & Tea Garden. Because petitioner offered no evidence regarding her association with Nature's Herb & Tea Garden, she has failed to rebut the

presumption that respondent's deficiency determination with respect to her income from that source was correct.[16]

G.   Deductions

Section 162 generally allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business".  An "ordinary" expense is one that is normal, usual, or customary in the type of business involved.  See Deputy v. Du Pont, 308 U.S. 488, 495 (1940).  A "necessary" expense is one that is "appropriate and helpful" to the taxpayer's business.  Welch v. Helvering, 290 U.S. 111, 113 (1933).

Deductions are a matter of legislative grace.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers have the burden to show they are entitled to any deduction claimed on their returns, and they must be able to point to some particular statute and demonstrate that they come within its terms.  Deputy v. Du Pont, supra at 493; New Colonial Ice Co. v. Helvering, supra.  Where taxpayers do not substantiate their claimed deductions, the Commissioner is not arbitrary or unreasonable in determining that the claimed deductions should be denied.  Roberts v. Commissioner, 62 T.C. 834, 837, (1974).

---

[16] On petitioner's 1999 Form 1040, Schedule C, she reported income from the business, "Natures Herbs", admitting her relationship with this business during that year.

Where a taxpayer claims a business expense, but cannot fully substantiate it, the Court may approximate the allowable amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, the taxpayer must provide reasonable evidence from which to estimate the deductible amount. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). If the evidence presented by the taxpayer is not sufficient to identify the nature of or estimate the extent of the expense, then the taxpayer is not entitled to the benefits of the Cohan rule. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Furthermore, where the taxpayer fails to cooperate with the Commissioner and this Court, we have no obligation to apply the Cohan rule. Lerch v. Commissioner, 877 F.2d 624, 628-629 (7th Cir. 1989), affg. T.C. Memo. 1987-295.

Petitioner claimed Form 1040, Schedule C deductions for expenses of Nature's Herb & Tea Garden. Accompanying petitioner's 1999 return was a list of expenses, listing only the total amounts allegedly incurred; i.e., $642 of office expense and $15,384 for supplies. Petitioner did not provide any evidence to substantiate these claimed expenses. Petitioner's list of expenses is not sufficient to substantiate such expenses or to enable us to apply the Cohan rule and estimate a deductible amount. The adjustments disallowing Schedule C expenses are sustained.

H.    Self-Employment Tax

Section 1401 imposes, in addition to other taxes, a tax on the self-employment income of every individual.  Subject to exclusions not applicable in the instant case, "self-employment income" refers to the "net earnings from self-employment derived by an individual".  Sec. 1402(b).  Section 1402(a) defines "net earnings from self-employment" as "the gross income derived by an individual from any trade or business carried on by such individual, less the [claimed] deductions [in 1999] allowed by this subtitle which are attributable to such trade or business".

The burden of proof to show that respondent's determination was in error remains with petitioner.  She offered no evidence and advanced no arguments with respect to liability for self-employment taxes.  The burden did not shift to respondent under section 7491.

Petitioner's income from real estate services and rental payments is documented by her receipt of several checks.  By filing her Form 1040 for 1999, petitioner admitted her Schedule C Nature's Herb & Tea Garden business income was subject to self-employment tax.  Petitioner is liable for the self-employment taxes in the amounts of $4,743 and $7,738 for 1999 and 2000, respectively.[17]

---

[17] For 1999, the notice of deficiency reported that
                                              (continued...)

IV.  Penalties

  A.   Section 6662

  With respect to examinations beginning after July 22, 1998, the Commissioner bears the burden of production in any court proceeding involving an individual's liability for penalties or additions to tax.  Sec. 7491(c).  To meet this burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty or addition to tax.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  In instances where an exception to the penalty or addition to tax is afforded upon a showing of reasonable cause, the taxpayer bears the burden of showing such cause.  Id. at 447.

  Section 6662(a) provides for an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment attributable to (among other things):  (1) Any negligence or disregard of the rules or regulations or (2) any substantial

---

  17(...continued)
petitioner had $33,569.51 of self-employment income. Petitioner's Form 1040, Schedule C reported 16,365 of income, and respondent made an adjustment of $17,543.51 to Form 1040, Schedule C income.  Petitioner's reported self-employment income ($16,365) combined with respondent's adjustment ($17,543.51) total $33,908.51.  After subtracting Form 1040, Schedule C taxes and licenses of $472 as allowed by respondent, there remains a difference of $133, which was the amount of loss reported on petitioner's 1999 Form 1040, Schedule C.  However, because the $70,000 Krismon Buttes payment is also self-employment income, the Court concludes that respondent has shown at least $33,569.51 of self-employment income for 1999.

understatement of income tax. Sec. 6662(b). An "understatement" is defined as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A).

Section 6662(c) and section 1.6662-3(b)(1), Income Tax Regs., define "negligence" as including any failure to make a reasonable attempt to comply with the Code and define the term "disregard" as including any "careless, reckless, or intentional disregard". Negligence is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299; ASAT, Inc. v. Commissioner, 108 T.C. 147, 175 (1997); Neely v. Commissioner, 85 T.C. 934, 947 (1985). A substantial understatement of income tax exists for an individual where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000. Sec. 6662(d)(1)(A).

The amount of the understatement shall be reduced by that portion of the understatement attributable to the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment or as to any item if (1) "the relevant facts affecting the item's tax treatment are adequately

disclosed in the return or in a statement attached to the return", and (2) "there is a reasonable basis for the tax treatment of such item by the taxpayer." Sec. 6662(d)(2)(B). Where a taxpayer can show there is reasonable cause for any portion of the underpayment and that the taxpayer acted in good faith with respect to that portion of the underpayment, then no penalty shall be imposed under section 6662(a) with respect to that portion of the underpayment. Sec. 6664(c).

Petitioner failed to report her correct income from Miroyal, National Land Bank, or Nature's Herbs & Tea Garden for 1999 and 2000. She had a substantial understatement of tax for 1999 and 2000. The understatement amount exceeds $5,000 per year and 10 percent of the amount required to be shown on the return. Petitioner did not offer any substantial authority or reasonable cause for failing to report her correct income; thus, she is liable for a penalty under section 6662 for 1999 and 2000. Respondent is sustained on this issue.[18]

B.  Section 6673

Section 6673 allows this Court to award a penalty to the United States in an amount not in excess of $25,000 for

---

[18] The Court need not determine whether petitioner was negligent in failing to report her income for 1999 and 2000 because there was a substantial understatement on her 1999 and 2000 returns.

proceedings instituted by the taxpayer primarily for delay or for proceedings in which the taxpayer's position is frivolous or groundless.  "A petition to the Tax Court, or a tax return, is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)(imposing penalties on taxpayers who made frivolous constitutional arguments in opposition to the income tax).  Courts have ruled that constitutional defenses to the filing requirement, such as petitioner presents, are groundless and wholly without merit. Ginter v. Southern, 611 F.2d 1226, 1229 (8th Cir. 1979); see also Brunner v. Commissioner, T.C. Memo. 2004-187, affd. per curiam 142 Fed. Appx. 53 (3d Cir. 2005); Williams v. Commissioner, T.C. Memo. 1999-277; Morin v. Commissioner, T.C. Memo. 1999-240; Sochia v. Commissioner, T.C. Memo. 1998-294 (all of which imposed a section 6673 penalty for tax protester arguments).

> Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants.  Once the legal system has resolved a claim, judges and lawyers must move on to other things. They cannot endlessly rehear stale arguments.  Both appellants say that the penalties stifle their right to petition for redress of grievances.  But there is no constitutional right to bring frivolous suits, see Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983).  People who wish to express displeasure with taxes must choose other forums, and there are many available. * * * [Coleman v. Commissioner, supra at 72.].

Respondent sought a section 6673 penalty in respondent's pretrial memorandum, but respondent did not request a penalty during trial or on brief, and the Court declines to impose such a penalty today. However, the Court explicitly admonishes petitioner that she may, in the future, be subject to a penalty under section 6673 for any further proceedings instituted or maintained primarily for delay or for any proceedings which are frivolous or groundless.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we have found them to be meritless, irrelevant, or moot.

To reflect the foregoing and concessions made by respondent,

<u>Decision will be entered under Rule 155</u>.